## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
## CENTRAL ISLIP

| | |
|---|---|
| Demetrius Williams, individually and on behalf of all others similarly situated, | 2:22-cv-00383 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| PL Developments Copiague, LLC, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.     PL Developments Copiague, LLC ("Defendant") manufactures, labels, markets, and sells antitussive drug products intended to treat colds and flu promoted as "non-drowsy" under the Ready In Case brand (the "Product").




2.     Oral antitussives contain a variety of approved active ingredients, including dextromethorphan hydrobromide ("dextromethorphan Hbr"). 21 C.F.R. § 341.14(a)(4).

3.     Plaintiff and consumers want to take over-the-counter ("OTC") drug products that improve their cold or flu, but also lets them be active, either for work, family obligations, or a desire to maintain control of their senses.

4.     To meet this demand, companies promote their OTC products as "non-drowsy."

5.     Though the Product is represented as "non-drowsy," it contains dextromethorphan Hbr, which is well-known for causing drowsiness.



6.     Numerous governmental agencies and third-parties caution users of products containing dextromethorphan Hbr from engaging in activity which requires them to be alert, because this can cause drowsiness.

7.     The representation of "non-drowsy" misleads consumers who expect they are purchasing a cold and flu product that will not make them drowsy or increase the chances they become drowsy.

8.     In marketing the Product, Defendant is required to refrain from statements that may be half-truths, misleading, or false. 21 C.F.R. § 341.74(b)(3)(vi); 21 C.F.R. § 341.74(c)(4)(v);

9.     The Product contains and makes other representations and omissions which are false

or misleading.

10.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

11.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

12.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

13.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

14.    The Product is sold for a price premium compared to other similar products, for no less than $1.25 per 4 oz, excluding tax or any sales, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

15.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

16.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

17.    Plaintiff Demetrius Williams is a citizen of Michigan.

18.    Defendant PL Developments Copiague, LLC is a Delaware limited liability company with a principal place of business in Westbury, Nassau County, New York and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

19.    The class of persons Plaintiff seeks to represent includes persons who are citizens of

different states from which Defendant is a citizen.

20.    Defendant transacts business within this District through sale of the Product to residents of this District and is headquartered in this District.

21.    The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

22.    Venue is in Central Islip in this District because a substantial part of the events or omissions giving rise to these claims occurred in Nassau County, i.e., Defendant's decisions for labeling the Product.

<u>Parties</u>

23.    Plaintiff Demetrius Williams is a citizen of Warren, Macomb County, Michigan.

24.    Defendant PL Developments Copiague, LLC is a Delaware limited liability company with a principal place of business in Westbury, New York, Nassau County.

25.    Defendant is a leader in private label OTC products.

26.    Private label refers to the practice where a manufacturer produces a product that is sold under the name of the retailer, often referred to as a "store brand."

27.    Over the past decade, private label products have increased in quality and often exceed the quality of the national brands.

28.    Defendant also sells products under its own Ready To Care brand.

29.    Because of Defendant's experience and expertise as a supplier for numerous private label brands, its Ready to Care brand has few equals in quality.

30.    Defendant's products are manufactured and packaged in state-of-the-art, federally-compliant facilities.

31.    The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

32.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Dollar Tree, at locations including 26696 Ryan Rd Warren MI 48091-1144 between December 2021 and January 2022, among other times.

33.    Plaintiff believed the Product would not cause drowsiness and did not contain ingredients which could cause drowsiness.

34.    Plaintiff bought the Product because he expected it would not cause drowsiness and did not contain ingredients which could cause drowsiness because that is what the representations said and implied.

35.    Plaintiff relied on the words, layout, packaging, and/or images on the Product, on the labeling, statements, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

36.    Plaintiff did not expect a product, especially from the Ready To Care brand, would promise it was "non-drowsy" even though it contained ingredients which made him drowsy or could increase his risk of becoming drowsy.

37.    Plaintiff was disappointed because he believed the Product would not cause drowsiness and did not contain ingredients which could cause drowsiness.

38.    Plaintiff bought the Product at or exceeding the above-referenced price.

39.    Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

40.    Plaintiff chose between Defendant's Product and products represented similarly, but

which did not misrepresent their attributes, features, and/or components.

41.    The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

42.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

43.    Plaintiff is unable to rely on the labeling and representations not only of this Product, but for other similar oral antitussives, because he is unsure whether those representations are truthful.

<u>Class Allegations</u>

44.    Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Michigan Class:** All persons in the State of Michigan who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Iowa, New York, Hampshire, New Mexico, Georgia, Michigan, Texas, Arkansas, Delaware, Wyoming, Virginia and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged.

45.    Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

46.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

47.    Plaintiff is an adequate representative because his interests do not conflict with other members.

48.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

49.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

50.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

51.   Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

52.   Plaintiff incorporates by reference all preceding paragraphs.

53.   Plaintiff and class members desired to purchase a product that would not cause drowsiness and did not contain ingredients which could cause drowsiness.

54.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

55.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

56.   Plaintiff relied on the representations that the Product would not cause drowsiness and did not contain ingredients which could cause drowsiness.

57.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

58.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are

similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

59.     Defendant intended that each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

60.     As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

61.     In addition, Defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breach of Contract

62.     Plaintiff entered into a contract with Defendant for purchase of the Product

63.     The terms of the contract provided that the Product would not cause drowsiness and did not contain ingredients which could cause drowsiness.

64.     Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

65.     Plaintiff was damaged by the breach, and those damages include the purchase price.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq</em>.

66.     The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it would not cause drowsiness and did not contain ingredients which could cause drowsiness.

67.     Defendant directly marketed the Product to Plaintiff and consumers through its

advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

68.     Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

69.     Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product would not cause drowsiness and did not contain ingredients which could cause drowsiness.

70.     Defendant's representations affirmed and promised that the Product would not cause drowsiness and did not contain ingredients which could cause drowsiness.

71.     Defendant described the Product as one which would not cause drowsiness and did not contain ingredients which could cause drowsiness, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

72.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

73.     This duty is based on Defendant's outsized role in the market for this type of Product, a trusted brand known for its quality products.

74.     Plaintiff recently became aware of Defendant's breach of the Product's warranties.

75.     Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

76.     Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

77.     Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices,

and by consumers through online forums.

78.  The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

79.  The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

80.  The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it would not cause drowsiness and did not contain ingredients which could cause drowsiness, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

81.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

82.  Defendant had a duty to truthfully represent the Product, which it breached.

83.  This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted brand known for its quality products.

84.  Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated its extra-labeling promises and commitments to quality, transparency and putting customers first.

85.  These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

86.  The representations took advantage of consumers' cognitive shortcuts made at the

point-of-sale and their trust in Defendant.

87.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

88.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

89.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would not cause drowsiness and did not contain ingredients which could cause drowsiness.

90.    Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity of the representations.

91.    Defendant knew of the issues described here yet did not address them.

92.    Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

93.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   January 21, 2022

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com